## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

STATE OF MARYLAND, ET AL.,

     Plaintiffs,

v.

                                       Case No.: 1:25-cv-04298-DLB

UNITED STATES DEPARTMENT OF
EDUCATION, ET AL.,

     Defendants.

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

BACKGROUND ................................................................................................................... 2

    A.  The FSCS Grant Program ...................................................................................... 2

    B.  The FSCS Grants at Issue in This Case ................................................................. 3

    C.  The Instant Complaint ........................................................................................... 5

LEGAL STANDARD ........................................................................................................... 5

ARGUMENT ........................................................................................................................ 6

    I.  This Court Lacks Jurisdiction Over Plaintiffs' Claims, Which Must Be
        Brought in the Court of Federal Claims Under the Tucker Act ........................... 6

          A. Recent Supreme Court and Fourth Circuit Decisions Apply to This Case
          and Preclude Jurisdiction Over Plaintiffs' Claims ........................................... 6

          B.  The *Megapulse* Test Dictates That Plaintiffs' Claims Belong
          in the Court of Federal Claims ......................................................................... 8

    II.  Plaintiffs' Spending Clause Claim Should Be Dismissed for Additional Reasons ........... 12

          A. Plaintiffs' Spending Clause Claim Is Precluded by *Dalton v. Specter* ..................... 12

          B.  The Spending Clause Has No Application to the Facts of This Case ....................... 15

CONCLUSION.................................................................................................................... 17

Defendants, by and through undersigned counsel, respectfully submit this memorandum of law in support of their motion to dismiss (the "Motion") the Complaint for Declaratory and Injunctive Relief, ECF No. 1 (the "Complaint" or "Compl.") filed by the State of Maryland, the District of Columbia, and the State of North Carolina (together, "Plaintiffs").

## INTRODUCTION[1]

In this action, Plaintiffs challenge the Department of Education's decisions not to continue four federal grants at the conclusion of the December 2025 budget period, after determining that the funded projects no longer served the best interests of the federal government. But Plaintiffs' claims are, at their core, contractual. As such, they fall within the exclusive jurisdiction of the Court of Federal Claims under the Tucker Act.

This case fits squarely within governing precedent. The Fourth Circuit's decisions in *Sustainability Institute* and *SHC*, as well as the Supreme Court's orders in *NIH* and *California*, confirm that disputes over federal grant funding—however styled—sound in contract and must be brought in the Court of Federal Claims. The fact that the grants at issue here were not continued at the end of a budget period through a notice of non-continuation, rather than terminated midstream, does not remove this case from the scope of that settled precedent. Accordingly, all of Plaintiffs' claims should be dismissed for lack of subject matter jurisdiction.

In addition, Plaintiffs' constitutional Spending Clause claim should be dismissed for failure to state a claim because it rests upon statutory violations and fails to satisfy the requirements of *ultra vires* review in that there is no statute that specifically prohibits the Department from discontinuing the grants at issue. Furthermore, the Spending Clause—which prohibits Congress from attaching ambiguous conditions to a state's receipt of federal funds—has nothing to do with

---

[1] Capitalized terms used but not defined in this Introduction shall have the meanings set forth in later sections of this brief.

the circumstances of this case.

For these reasons and those discussed below, Defendants respectfully request that the Complaint be dismissed with prejudice.

**BACKGROUND**

**A.     The FSCS Grant Program**

The Full-Service Community Schools ("FSCS") grant program is a discretionary federal grant program administered by the United States Department of Education (the "Department") and authorized under the Elementary and Secondary Education Act of 1965, as amended, 20 U.S.C. § 7271, *et seq*.   The program provides funding to support the planning, implementation, and operation of "full-service community schools"—public elementary or secondary schools that partner with community organizations to provide integrated academic, social, and health services to students and families, particularly for children attending high-poverty schools.  *See* 20 U.S.C. § 7271(2).   These grants are typically awarded to consortia that can include a local educational agency (*i.e.*, a school district) and one or more nonprofit community-based partners.  *Id.* §§ 7272(1)(B).[2]   FSCS grants may be provided for no more than 5 years unless extended.  *Id.* § 7273(b).

In approving multi-year projects, like those funded by FSCS grants, the Department makes a grant to the project for the initial 12-month budget period and "[i]ndicates [its] intention to make continuation awards to fund the remainder of the project period."  34 C.F.R. § 75.251(b); *see also* Compl. ¶ 5.  In order to receive a continuation award, a grantee must meet five criteria, including: (1) "[d]emonstrate that it has made substantial progress in achieving [] [t]he goals and objectives of the project" and "[t]he performance targets in the grantees' approved application" or,

---

[2]     *See    generally*    https://www.ed.gov/grants-and-programs/grants-birth-grade-12/school-and-community-improvement-grants/full-service-community-schools-program-fscs.

alternatively, obtain approval for certain changes to the project; (2) submit all required reports; (3) continue to meet all eligibility requirements; (4) maintain required financial and administrative management systems; and (5) "[r]eceive a determination from the Secretary that continuation of the project is in the best interest of the Federal Government." 34 C.F.R. § 75.253(a). *See also* 20 U.S.C. § 7273(c) ("Continued funding of a grant under this subpart . . . after the third year of the initial grant period shall be contingent on the eligible entity's progress toward meeting . . . annual performance objectives and outcomes under section 7275(a)(4)(c) of this title.").

"In determining whether the grantee has met the requirements described in paragraph (a) of this section, the Secretary may consider any relevant information regarding grantee performance. This includes considering reports required by § 75.118, performance measures established under § 75.110, financial information required by 2 CFR part 200, and any other relevant information." 34 C.F.R. § 75.253(b). "The Secretary may decide not to make a continuation award if . . . [a] grantee fails to meet any of the requirements in paragraph (a) of this section . . . ." *Id.* § 75.253(f). A grantee must be provided with the opportunity to request reconsideration of the decision not to make a continuation award. *Id.* § 75.253(g). The fact that continuation funding is not guaranteed, as well as the requirements needed to obtain continuation funding (including a determination that continuing the project is in the best interest of the government), are expressly contained in each of the FSCS grant awards. *See, e.g.*, ECF No. 1-3 at 7, 10.

**B.    The FSCS Grants at Issue in This Case**

On December 22, 2022, the University of Maryland, Baltimore ("UMB") was awarded an FSCS grant in the amount of approximately $1.9 million for a performance period of January 1, 2023 through December 31, 2027. A copy of UMB's grant is attached to the Complaint as

Exhibit 3. *See also* Compl. ¶¶ 7, 26, 51-52. On November 20, 2023, the Department continued funding for UMB's program for 2024. A copy of UMB's 2024 continuation award is attached to the Complaint as Exhibit 4. *See also* Compl. ¶ 53. On December 20, 2024, the Department continued funding for UMB's program for 2025. A copy of UMB's 2025 continuation award is attached to the Complaint as Exhibit 5. *See also* Compl. ¶ 54.

On December 22, 2022, the District of Columbia Public Schools ("DCPS") was awarded an FSCS grant in the amount of approximately $2.5 million for a performance period of January 1, 2023 through December 31, 2027. The Department continued funding for DCPS's program for 2024 and 2025. On November 28, 2023, DCPS was awarded a second FSCS grant in approximately the same amount ($2.5 million) for a performance period of January 1, 2024 through December 31, 2028. The Department continued funding for DCPS's program for 2025. Copies of DCPS's grants are attached hereto as Exhibit A and Exhibit B. *See* Compl. ¶¶ 8, 27, 53.

On November 28, 2023, Duke University ("Duke") was awarded an FSCS grant in the amount of approximately $49.8 million for a performance period of January 1, 2024 through December 31, 2028. The Department continued funding for Duke's program for 2025. A copy of Duke's grant is attached hereto as Exhibit C. *See also* Compl. ¶¶ 9, 28, 53.

By letters dated December 12, 2025, UMB, DCPS, and Duke were provided notice of the Department's decision not to continue their federal grant awards based upon a finding that continuing the project was not in the best interest of the federal government under 34 C.F.R. § 75.253(a)(5). *See, e.g.*, Compl., Ex. 1 (Notice of Non-Continuation of Grant Award to UMB); *see also* Compl. ¶¶ 11, 12, 57. Each notice included an individualized determination regarding the Department's conclusion that continuing the project was not in the best interest of the federal government. For example, the notice to UMB cited project activities in UMB's grant application

that Department staff identified as being in "conflict with the Department's policy of prioritizing merit, fairness, and excellence in education." Compl., Ex. 1.

The grantees each sought reconsideration of the Department's decision, which were denied. *See, e.g.*, Compl., Exhibit 6 (UMB's Request for Reconsideration dated December 19, 2025); *see also* Compl. ¶¶ 68-72.

**C.      The Instant Complaint**

On December 30, 2025, Plaintiffs filed the instant Complaint, ECF No. 1, asserting four claims. Counts I-III are brought pursuant to the Administrative Procedure Act (the "APA") and challenge the Department's decisions not to continue the grants as being arbitrary and capricious (Count I), contrary to law (Count II), and without observance of procedure required by law—specifically, notice and comment (Count III). Count IV asserts a violation of the Spending Clause of the U.S. Constitution based upon allegations that the Department's decisions not to continue the grants "altered the conditions upon which grants were obligated and funds disbursed, contrary to the Spending Clause." Compl. ¶ 128. Plaintiffs seek "an order and judgment . . . and permanent injunction, holding unlawful and vacating the Non-Continuation Decision and enjoining Defendants from implementing, maintaining, or reinstating the Non-Continuation Decision." *Id.* ¶¶ 103, 111, 123, 131; *see also id.* at 32 (Prayer for Relief) (asking this Court to "[i]ssue . . . permanent injunctive relief barring implementation of the Non-Continuation Decision . . . and requir[e] the Department to make a new continuation award decision for the next budget period"; and to "hold[] unlawful and vacat[e] the Defendants' Non-Continuation Decision").

**LEGAL STANDARD**

Defendants file this Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). On a Rule 12(b)(1) motion, the plaintiff bears the burden of proving that

5

subject matter jurisdiction exists.  *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

The district court should grant a Rule 12(b)(1) motion "only if the material jurisdictional facts are

not in dispute and the moving party is entitled to prevail as a matter of law."  *Id.*

To defeat a Rule 12(b)(6) motion, a complaint must allege sufficient facts to state a

plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible when

"the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Id.*  Legal conclusions or conclusory statements

do not suffice and are not entitled to the assumption of truth.  *Nemet Chevrolet, Ltd. v.

Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

### ARGUMENT

**I.    This Court Lacks Jurisdiction Over Plaintiffs' Claims, Which Must Be Brought in the Court of Federal Claims Under the Tucker Act.**

> **A.    Recent Supreme Court and Fourth Circuit Decisions Apply to This Case and Preclude Jurisdiction Over Plaintiffs' Claims.**

Four recent decisions from the Supreme Court and the Fourth Circuit guide the

jurisdictional analysis in this case:  (1) *Sustainability Institute v. Trump*, 165 F.4th 817 (4th Cir.

2026); (2) *Solutions in Hometown Connections v. Noem*, 165 F.4th 835 (4th Cir. 2026) (hereinafter

"*SHC*"); (3) *Nat'l Institutes of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 26 (Aug. 21, 2025)

(hereinafter "*NIH*"); and (4) *Dep't of Educ. v. California*, 604 U.S. 650 (2025) (hereinafter

"*California*").[3]  In each case, the Court held that a lawsuit challenging the termination of a federal

---

[3] Another case involving similar Tucker Act jurisdictional issues—*Am. Ass'n of Colleges for Teacher Educ. v. U.S. Dep't of Educ.* (hereinafter "*AACTE*")— was, until yesterday, on appeal to the Fourth Circuit.  In *AACTE*, this Court (Judge Rubin presiding) granted a preliminary injunction ordering the Department to reinstate federal grants, which the Court had found were unlawfully terminated.  770 F. Supp. 3d 822, 850-56, 860-61 (D. Md. 2025).  In a separate opinion, Judge Rubin rejected the Department's Tucker Act jurisdiction argument, which was raised via an emergency motion for reconsideration, finding that the claims were properly brought in district court.  Case No. 25-cv-00702-JRR, 2025 WL 863319 (D. Md. Mar. 19, 2025).  On April 10, 2025, the Fourth Circuit granted the government's motion to stay the preliminary injunction pending the appeal, based on the Supreme Court's stay entered in *California*.  App. No. 25-1281, 2025 WL 1232337 (4th Cir. Apr. 10, 2025).  On October 8, 2025, the Fourth Circuit placed the

6

grant must be brought in the Court of Federal Claims pursuant to the Tucker Act, not in federal district court.  *See Sustainability Institute*, 165 F.4th at 825-29; *SHC*, 165 F.4th at 842-44; *NIH*, 145 S. Ct. at 2659; *California*, 604 U.S. at 650-51.

The salient question here is whether these cases apply to the facts of this case.  They do.  As in those four cases, in this case, the defendant federal agency canceled certain grants, and the plaintiffs seek an order vacating those cancellations as unlawful.[4]  The ***singular difference*** in the instant case is that rather than terminating the grants at issue in the middle of a budget period via a notice of termination—as the defendant agencies did in *Sustainability Institute*, *SHC*, *NIH*, and *California*—here, the Department canceled the grants at the end of the fiscal year via a notice of non-continuation.  *See* ECF No. 1-1 (Notice of Non-Continuation Award).

This is not a meaningful distinction, and creating one would lead to incongruous and absurd results.  For example, there can be no serious dispute that had the Department simply terminated the grants in December 2025, rather than issuing the Notices of Non-Continuation, this action would belong in the Court of Federal Claims.  The same result would follow if the Department had continued the grants and then terminated them in January 2026.  There should not be—and is not—a material difference when the agency non-continues a grant into the next fiscal year.

Three district courts have specifically considered whether the Tucker Act applies to claims challenging the non-continuation of federal grants, and they are split on this issue.  In *Board of*

---

case in abeyance pending a decision in *Sustainability Institute* and *SHC*.  App. No. 25-1281, ECF No. 50.  Yesterday evening, the parties filed a Stipulation of Dismissal in the district court.  Case No. 25-cv-00702-JRR, ECF No. 61.

[4] *Accord SHC*, 165 F.4th at 842-44 ("The government conduct at issue in both *California* and *NIH* is substantially the same as the conduct complained about in this case.  As the district court pointed out, only the verbiage and characterizations differed.  Because *California* and *NIH* 'inform how a court should exercise its equitable discretion in like cases,' . . . we conclude in this factually analogous case that the district court did not abuse its discretion in denying materially similar relief."); *Sustainability Institute*, 165 F.4th at 826-27 ("If the *California* district court lacked jurisdiction to issue its order, it follows that the district court did here as well.  And our conclusion is further confirmed by the Supreme Court's subsequent decision in [*NIH*].").

*Educ. for Silver Consol. Schools v. McMahon*, 791 F. Supp. 3d 1272 (D.N.M. 2025), the court considered APA and constitutional claims challenging the Department's non-continuation of certain grants funding mental health services under the Bipartisan Safer Communities Act. *Id.* at 1278-79. The court held that "[t]he non-continuation of Plaintiff's grant funding is the type of contract claim that gives rise to Tucker Act jurisdiction," noting that "Plaintiff attempts to mount statutory claims and constitutional challenges—but ultimately the controversy is over a contract," and dismissed the claims for lack of jurisdiction. *Id.* at 1284-85.

Two other district courts, however, have rejected Defendants' argument that the Tucker Act applies to an agency's decision to non-continue grants. *See Washington v. U.S. Dep't of Educ.*, Case No. 25-cv-1228-KKE, 2025 WL 2966255 (W.D. Wash. Oct. 21, 2025), *aff'd*, 161 F.4th 1136 (9th Cir. 2025); *Council for Opportunity in Educ. v. U.S. Dep't of Educ.*, Case No. 25-cv-03491-TSC, 2026 WL 120984 (D.D.C. Jan. 16, 2026). Defendants respectfully submit that these cases are not binding on this Court (unlike *Sustainability Institute*[5]) and, in any event, were wrongly decided for the reasons discussed herein. Defendants respectfully suggest that *Board of Educ. for Silver Consol. Schools*, *supra*, reflects a sounder interpretation of the law and urge this Court to adopt its reasoning here.

### B. The *Megapulse* Test Dictates That Plaintiffs' Claims Belong in the Court of Federal Claims.

In determining whether a particular action is "at its essence a contract action" subject to the Tucker Act or instead a challenge properly brought under the APA, the Fourth Circuit applies the standard articulated by the D.C. Circuit in *Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir.

---

[5] In *Washington*, the court addressed the Fourth Circuit's stay order that had been entered at that time in *Sustainability Institute*, No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025), stating that this "out-of-circuit decision[] [is] not binding on this Court and [is], moreover distinguishable as involving terminated grants that plaintiffs sought to reinstate, rather than future discontinuances that plaintiffs sought to set aside." 2025 WL 2966255, at *9. (*Washington* was decided months prior to the Fourth Circuit's recent decisions in *Sustainability Institute* and *SHC*.)

1982), which looks at both "the source of the rights upon which the plaintiff bases its claims" and "the type of relief sought (or appropriate)." *Sustainability Institute*, 165 F.4th at 825-26 (quoting *Megapulse*, 672 F.2d at 968). Applying the *Megapulse* standard here, Plaintiffs' claims are in essence contract claims.

First, "the source of the rights upon which the plaintiff bases its claims" are federal grant awards. All of the rights that Plaintiffs seek to vindicate in this lawsuit derive from grants issued by the federal government. It is the original grants awards, which contemplated funding for multi-year projects,[6] that give rise to any right to be considered for a continuation award. *SHC*, 165 F.4th at 843 ("Without that contractual basis, the plaintiffs could claim no relief."). Those grants are the only reason Plaintiffs are here. Indeed, nearly every paragraph of the Complaint includes reference to the grants and/or the projects they funded. The alleged harm relates solely to financial injuries resulting from the non-continuations of their grants (*see* Compl. ¶¶ 74-85), which harm can only be redressed by an order reinstating the grants—relief that both the Supreme Court and the Fourth Circuit have held is not available in district court.

Further, just because Plaintiffs invoke statutes and regulations that "might impose procedural requirements on the government having some impact on the contract" does not mean that those provisions "create[] the substantive right to the remedy [they] seek[]." *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985). Courts consistently reject attempts to reframe a contract dispute in constitutional or statutory terms so as to subject it to district court

---

[6] *See, e.g.*, Compl. ¶¶ 100 ("These grantees have structured their budgets **with the understanding that Defendants would make annual continuation awards** based on grantees' project performance . . . under the FSCS program through the remainder of the project performance period. . . . Grantees have also structured their budgets in the expectation that, consistent with their project proposals, they would have several years to generate performance results and identify and build relationships with new sources of funding that would allow grantees to continue their projects following the end of the federally funded performance period.") (emphasis added); 34 C.F.R. § 75.251(b) ("If the Secretary approves a multi-year project period, the Secretary: (1) Makes a grant to the project for the initial budget period; and (2) **Indicates his or her intention to make continuation awards to fund the remainder of the project period**.") (emphasis added).

jurisdiction (indeed, the point of the *Megapulse* standard is to determine the "essence" of the claim regardless of how it is pled).  *See, e.g.*, *Portsmouth Redevelopment & Housing Auth. v. Pierce*, 706 F.2d 471, 474-75 (4th Cir. 1983) ("the Claims Court is the proper forum for this action, whether it is characterized as one in contract or one to interpret provisions of the Constitution, federal statutes, or regulations pertaining to the contract" in case where "the primary objective . . . [was] to recover money allegedly wrongfully withheld by the federal government").[7]  As the Fourth Circuit recently explained in *Sustainability Institute*, "[t]he upshot is that the alleged statutory and constitutional violations do not alter the essentially contractual nature of Plaintiffs' APA claims."  165 F.4th at 827.  The ultimate source of Plaintiffs' asserted right to a decision by the Department to continue the grants into the next budget period is the grant awards, not the statutes or regulations that Plaintiffs claim the government violated.

Defendants acknowledge this Court's opinion in *Maryland v. Corp. for Nat'l & Comm. Serv.*, 785 F. Supp. 3d 68 (D. Md. 2025) (hereinafter "*AmeriCorps*"), in which this Court held that the Tucker Act did not apply.  This Court found that the source of the plaintiffs' rights were federal statutes, not terminated grants, explaining:

> The States allege that AmeriCorps did not comply with, among other statutory provisions, the notice-and-comment rulemaking requirement in the 2024 Appropriations Act and the 2025 Appropriations Act.  The right asserted—to participate in notice-and-comment rulemaking prior to significant changes to AmeriCorp's program requirements, service delivery or policy—is separate and apart from any rights that States have under the grants.

---

[7] *See also United States v. J&E Salvage Co.*, 55 F.3d 985, 987-88 (4th Cir. 1995) ("It is well-established . . . that disguised contract actions may not escape the CDA. . . . Neither contractors nor the government may bring a contract action in federal district court simply by recasting claims in tort language or as some statutory or regulatory violation," and rejecting effort by United States, as plaintiff, to present its case as a tort action in order to manufacture federal district court jurisdiction, finding "[t]he crux of the case rests on a specific contract" – specifically, a "Notice of Award" from the government to defendant); *Am. Sci. & Eng'g, Inc. v. Califano*, 571 F.2d 58, 61 (1st Cir. 1977) ("courts have consistently rejected attempts to cast a contract dispute in different terms so as to subject it to the jurisdiction of the district court," and holding that, notwithstanding plaintiff's characterization in its complaint of the dispute "as an agency action '*ultra vires*' of its authority, in violation of [agency] regulations and due process of law," "it is clear that this is essentially a contract dispute" to which the Tucker Act applied).

10

*Id.* at 104-05.    However, *AmeriCorps* can be distinguished because it involved allegations regarding the "mass closure" of over 1,000 AmeriCorps programs and a specific administrative provision included in the applicable appropriations statute providing that "[AmeriCorps] shall make any significant changes to program requirements, service delivery or policy only through public notice and comment rulemaking.'" *Id.* at 83-84 (quoting 2024 Appropriations Act § 401, 138 Stat. at 695), 91.    The instant case involves the discontinuance of specific, individual grants for specific purposes and no similar statutory directive.

Notably, *AACTE* involved APA claims alleging (like Count III in this case) that the Department terminated certain grants in violation of the notice and comment requirements under the General Education Provisions Act ("GEPA").    770 F. Supp. 3d at 835-36, 852-56.    As noted *supra* in footnote 3, the Fourth Circuit entered a stay of the district court's preliminary injunction pending appeal based on the Supreme Court's ruling in *California*.    2025 WL 1232337, at *1. Although this order is an emergency stay decision, it is nevertheless a helpful representation of the APA's limitations in a case that bears resemblance to this dispute.[8]    The Fourth Circuit then placed the *AACTE* appeal in abeyance pending a decision in *Sustainability Institute* and *SHC*.    App. No. 25-1281, ECF No. 50.    As has been discussed at length, the Fourth Circuit entered decisions in *Sustainability Institute* and *SHC*, finding that the Tucker Act applied.    Although the *AACTE* case has now been voluntarily dismissed, the Fourth Circuit's preliminary rulings in the appeal strongly suggest that the Fourth Circuit considers the Tucker Act jurisdictional issues in *AACTE* to be addressed by *California*, *Sustainability Institute*, and *SHC*.

Second, "the type of relief sought (or appropriate)" also reflects the contractual nature of this action.    Plaintiffs seek "an order and judgment . . . and permanent injunction, holding unlawful

---

[8] In *Sustainability Institute*, the Fourth Circuit considered stay decisions entered by the Supreme Court in *NIH* and *California* to be "instructive."  165 F.4th at 826.

and vacating the Non-Continuation Decision and enjoining Defendants from implementing, maintaining, or reinstating the Non-Continuation Decision."  Compl. ¶¶ 103, 111, 123, 131; *see also id.* at 32 (Prayer for Relief) (asking this Court to "[i]ssue . . . permanent injunctive relief barring implementation of the Non-Continuation Decision . . . and requir[e] the Department to make a new continuation award decision for the next budget period"; and to "hold[] unlawful and vacat[e] the Defendants' Non-Continuation Decision").  This is precisely the relief that the Supreme Court and the Fourth Circuit has held that the district courts lacked jurisdiction to order. *See NIH*, 145 S. Ct. at 2658 ("The application [to stay] is granted as to the District Court's judgments vacating the Government's termination of various research-related grants."); *California*, 145 S. Ct. at 650 (granting application to stay TRO "enjoining the Government from terminating various education-related grants."); *Sustainability Institute*, 165 F.4th at 828 ("An order vacating the government's decision to terminate grants under the APA is in every meaningful sense an order requiring the government to pay those grants.") (quoting *NIH*, 145 S. Ct. at 2664) (Gorsuch, J., concurring in part and dissenting in part); *SHC*, 165 F. 4th at 844 ("*The plaintiffs' motion for preliminary injunction sought at its core an order 'to restore' the Grant Program so that the plaintiffs could have 'funding' for their work.*  And the injunction order that they proposed would prohibit the defendants from 'dismantl[ing]' the Program and 'pausing, freezing, impeding, or blocking the disbursement of grant funds.'  These requests are hardly distinct from those made in *California* and *NIH*, on which the Supreme Court concluded that the plaintiffs were unlikely to succeed with respect to jurisdiction.").

## II.    Plaintiffs' Spending Clause Claim Should Be Dismissed for Additional Reasons.

### A.    Plaintiffs' Spending Clause Claim Is Precluded by *Dalton v. Specter*.

Plaintiffs assert a constitutional Spending Clause claim grounded in the same conduct as

their APA challenges. *See* Compl. ¶¶ 124-31. As explained above, courts do not allow plaintiffs to manipulate district court jurisdiction over claims sounding in contract by reframing such claims as constitutional claims. *See, e.g.*, *Portsmouth Redevelopment*, *supra*; *see also Washington*, 2025 WL 2966255, at *8 ("The Tucker Act likewise deprives district courts of jurisdiction to hear contract claims disguised as constitutional claims" and noting that the "*ultra vires* exception to sovereign immunity does not apply to contract-based claims," citing *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 704 (1949)). So, to be clear, this claim is also subject to dismissal due to Tucker Act jurisdiction.

But even if the Tucker Act did not divest this Court of jurisdiction over the Spending Clause claim, it is subject to dismissal under *Dalton v. Specter*, 511 U.S. 462 (1994). In *Sustainability Institute*, the Fourth Circuit applied *Dalton* to dismiss claims against several federal agencies alleging constitutional separation of powers and Presentment Clause violations where the plaintiffs' grants had been suspended or terminated. 165 F.4th at 829-34. The Fourth Circuit found that "both of Plaintiffs' constitutional claims assert that because executive officials and agencies violated statutes, they also violated the Constitution." *Id.* at 831. Because "both claims simply allege that the Government has exceeded its statutory authority," "[t]he claims are therefore statutory ones" that are subject to the constraints of ultra vires review. *Id.* (quoting *Dalton*, 511 U.S. at 473). The Fourth Circuit then held that the claims failed to "show that the Government 'has taken action entirely in excess of its delegated powers and contrary to a *specific prohibition* in a statute.'" *Id.* at 833 (quoting *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025)). The Fourth Circuit concluded: "Absent a statute specifically prohibiting the Government from freezing or terminating Plaintiffs' grants, the district court erred in finding that the Government likely acted ultra vires in freezing or terminating those grants." *Id.*

13

The same logic forecloses Plaintiffs' Spending Clause claim in this case. As with the alleged constitutional violations in *Sustainability Institute*, Plaintiffs' Spending Clause claim rests on alleged statutory/regulatory violations. Plaintiffs allege that Defendants "unilaterally discontinue[d] a federal grant on grounds not authorized by Congress through the program grant authorizing statutes or GEPA, and are not consistent with 34 C.F.R. § 75.253." Compl. ¶ 129. As a result, Plaintiffs' Spending Clause claim "must stay within 'the painstakingly delineated procedural boundaries' of 'nonstatutory ultra vires review,' including "that Plaintiffs must show that the Government 'has taken action entirely in excess of its delegated powers and contrary to a *specific prohibition* in a statute.'" *Sustainability Institute*, 165 F.4th at 832 (quoting *Nuclear Regul. Comm'n*, 605 U.S. at 681). No statute specifically prohibits the Department from discontinuing the grants at issue in this case. To the contrary, the grants themselves specifically contemplate that the agency can discontinue the grants upon a finding by the Secretary that continuing the project is not in the best interests of the federal government, as do the regulations incorporated therein. *See*, *e.g.*, ECF No. 1-3 at 7 ("THIS AWARD SUPPORTS ONLY THE BUDGET PERIOD SHOWN IN BLOCK 6. IN ACCORDANCE WITH 34 CFR 75.253, THE SECRETARY CONSIDERS, AMONG OTHER THINGS, CONTINUED FUNDING IF: . . . 2) THE DEPARTMENT DETERMINES THAT CONTINUING THE PROJECT WOULD BE IN THE BEST INTEREST OF THE GOVERNMENT."); *id.* ("THE SECRETARY ANTICIPATES FUTURE FUNDING FOR THIS AWARD ACCORDING TO THE SCHEDULE IDENTIFIED IN BLOCK 6. THESE FIGURES ARE ESTIMATES ONLY AND DO NOT BIND THE SECRETARY TO FUNDING THE AWARD FOR THESE PERIODS OR FOR THE SPECIFIC AMOUNTS SHOWN."); *id.* at 10 (regarding "*FUTURE BUDGET PERIODS").

**B.      The Spending Clause Has No Application to the Facts of This Case.**

The Supreme Court recently explained that "[t]he Constitution has no 'Spending Clause,' strictly speaking." *Medina v. Planned Parenthood S. Atl.*, 145 S. Ct. 2219, 2230 (2025).  Rather, Congress's authority to spend derives from Article I, Section eight, Clause one, which grants Congress the power to "lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States."  *Id.*  "Incident to this power, Congress may attach conditions on the receipt of federal funds."  *S. Dakota v. Dole*, 483 U.S. 203, 207 (1987); *Nat'l Fed. of Independent Business v. Sebelius*, 567 U.S. 519, 577 (2012) ("Congress may use its spending power to create incentives for States to act in accordance with federal policies.").  The spending power, however, is "subject to several general restrictions," including the principle that "if Congress desires to condition the States' receipt of federal funds, it 'must do so unambiguously, enabling the States to exercise their choice knowingly, cognizant of the consequences of their participation.'"  *S. Dakota*, 483 U.S. at 208.  Accordingly, Spending Clause issues typically arise in the context of a challenge to the conditions that Congress has placed on a State's receipt of federal funds (*e.g.*, *Nat'l Fed. of Independent Business*, 567 U.S. at 575-85; *City of Los Angeles v. Barr*, 929 F.3d 1163, 1174-76 (9th Cir. 2019)), or a lawsuit to enforce those conditions (*e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 15-27 (1981); *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 294-98 (2006)).

That context bears no resemblance to the circumstances of the instant case.[9]  The federal grants at issue here were not awarded to States; rather, the grantees were UMB, DCPS, and Duke. *See Fla. v. Cardona*, 752 F. Supp. 3d 1320, 1336–37 (S.D. Fla. 2024) (finding "the Spending

---

[9] Even in *City of Los Angeles v. Barr*, relied upon by Plaintiffs (Compl. ¶ 127), the Ninth Circuit stated that "the applicable Spending Clause principles do not readily apply to an allocation of grant funds through a competitive grant process, such as the program in this case."  929 F.3d at 1175.

Clause is wholly inapplicable" where "it is undisputed that the State is not receiving the funds"; "There is no precedent for striking down an act of Congress on the grounds that it violates the Spending Clause when the funds at issue are not given to a state or local government entity. Indeed, *every* case cited by either party involves a challenge to a statute or regulatory scheme that provided federal funds to a state or local government entity."). In addition, Congress has not allegedly placed unlawful conditions on the funding; it is an Executive branch agency whose conduct is at issue. *See Board of Educ. for Silver Consol. Schools*, 791 F. Supp. 3d at 1288 ("the Spending Clause is only implicated 'when Congress imposes a spending or funding condition.' . . . And without alleging congressional action, Plaintiff 'cannot state a claim under the Spending Clause," quoting *Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. Of the President*, 784 F. Supp. 3d 127, 162 (D.D.C. 2025)).[10]

Furthermore, the Department's conduct at issue in this case does not involve implementing Spending Clause legislation or the retroactive conditioning of grant funds. Rather, the agency discontinued grants upon finding that they were not in the best interest of the federal government. *See*, *e.g.*, ECF No. 1-1. That funding in subsequent budget periods was not guaranteed but instead was contingent upon (among other things) a finding that continuing the project was in the best interest of the government was an express term of the grant, which the recipients voluntarily accepted. *See* ECF No. 1-3 (quoted *supra* at 14). As discussed above, whether those cancellations were unlawful is a question that this Court lacks jurisdiction to answer. Plaintiffs' constitutional claim seeks to extend existing precedent regarding the Spending Clause beyond any recognized context in which it has been applied.

---

[10] *But see*, *e.g.*, *Los Angeles*, 929 F.3d at 1175 n.6 (noting a "gap in existing Spending Clause precedent—that the principles of *Dole* and *NFIB* apply to agency-drawn conditions on grants to states and localities just as they do to conditions Congress directly places on grants" and finding that those Spending Clause principles apply to conditions on grants placed by a federal agency).

16

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Complaint be dismissed with prejudice.

Dated:  March 18, 2026

Respectfully submitted,

Kelly O. Hayes
United States Attorney

By:    /s/  Jessica Dillon
        Jessica F.W. Dillon (Bar No. 19249)
        Assistant United States Attorney
        36 South Charles Street, 4th Floor
        Baltimore, Maryland 21201
        (410) 209-4892 (direct)
        (410) 962-2310 (fax)
        jessica.dillon@usdoj.gov

        *Counsel for Defendants*

17