**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

STATE OF MARYLAND, ET AL.,

      Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
EDUCATION, ET AL.,

      Defendants.

Case No.: 1:25-cv-04298-DLB

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANTS' MOTION TO DISMISS AND IN OPPOSITION TO
<u>PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

ARGUMENT ............................................................................................................................ 1

I.    Defendants Are Not Collaterally Estopped From Arguing Issues
      Determined Against the Department in *Washington* .......................................................... 1

      A. Standards applicable to collateral estoppel .................................................................. 1

      B. Application to this case .............................................................................................. 3

II.   The Tucker Act Applies to Plaintiffs' Claims and Precludes
      Subject Matter Jurisdiction in This Court .......................................................................... 8

      A. *Megapulse* Prong 1:  "the source of the rights upon
      which Plaintiffs base their claims" .................................................................................. 8

      B. *Megapulse* Prong 2:  "the type of relief sought (or appropriate)" ............................ 10

      C. The lack of a viable claim or adequate remedy in the
      Court of Federal Claims does not give rise to district court jurisdiction ....................... 12

III.  Plaintiffs Do Not State a Spending Clause Claim ............................................................ 13

IV.   Defendants' Opposition to Plaintiffs' Cross-Motion for Summary Judgment .................. 14

      A. Plaintiffs are wrong on the merits of Count III. ......................................................... 15

      B.  North Carolina has not established standing. ............................................................. 20

CONCLUSION ...................................................................................................................... 22

Defendants, by and through undersigned counsel, submit this reply memorandum of law in further support of their motion to dismiss, ECF No. 11, and in Opposition to Plaintiffs' Cross-Motion for Summary Judgment, ECF No. 12-1 ("Plaintiffs' Brief" or "Pl. Br.").[1]

**I.      Defendants Are Not Collaterally Estopped From Arguing Issues Determined Against the Department in *Washington*.**

Plaintiffs deflect from the Tucker Act's implications by arguing that this Court should not consider its subject matter jurisdiction at all and instead should find that Defendants are precluded from raising that argument, as against Maryland, pursuant to the doctrine of collateral estoppel. But collateral estoppel does not—and should not—apply to preclude legal arguments determined against the government by the United States District Court for the Western District of Washington in an unrelated case involving 16 state plaintiffs, including Maryland.

**A.      Standards applicable to collateral estoppel**

The elements of collateral estoppel are:

(1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.

*Vein & Wellness Grp., LLC v. Becerra*, No. 22-2253, 2024 WL 3064713, at *4 (4th Cir. June 20, 2024) (quoting *Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998)). The party invoking collateral estoppel bears the burden of showing each element. *Id.* Collateral estoppel can be used offensively or defensively. "Offensive" collateral estoppel refers to where a *plaintiff* is seeking to estop a defendant from relitigating issues that the defendant previously

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the Memorandum of Law in Support of Defendants' Motion to Dismiss, ECF No. 11-1 ("Defendants' Brief" or "Def. Br."). Exhibits referenced herein are to the Exhibits attached to Plaintiffs' Brief (*see* Pl. Br. at ii, Table of Exhibits).

litigated and lost, whereas "defensive" collateral estoppel refers to where a *defendant* is seeking to estop a plaintiff from relitigating those issues. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, n.4 & 329 (1979); *United States v. Mendoza*, 464 U.S. 154, 159 n.4 (1984). Collateral estoppel can also be "mutual"—referring to where the parties in the prior litigation are the same as those involved in the litigation at hand—or "nonmutual"—referring to where the parties are different. *Mendoza*, 464 U.S. at 159. Collateral estoppel is an equitable doctrine, and trial courts have "broad discretion" in determining whether to apply it. *Parklane Hosiery*, 439 U.S. at 331.

There are several exceptions to the use of collateral estoppel. "[I]t is black letter law that a determination will not have preclusive effect when it is 'itself inconsistent with another determination of the same issue.'" *Washington v. Pellegrini*, 125 F.4th 118, 127 (4th Cir. 2025) (quoting Restatement (Second) of Judgments § 29).[2] Relatedly, "courts should not apply collateral estoppel where unfairness results." *Id.* at 127. *See also Parklane Hosiery*, 439 U.S. at 330-31 (collateral estoppel would be unfair to a defendant and should not be allowed where "the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant."). Collateral estoppel also does not apply to cases presenting "unmixed questions of law." *Alabama v. U.S. Army Corps of Engineers*, 704 F. Supp. 3d 20, 73 (D.D.C. 2023).

Importantly, the law treats collateral estoppel differently when invoked against the federal government versus private litigants. *Mendoza*, 464 U.S. at 159 ("We have long recognized that 'the Government is not in a position identical to that of a private litigant.'"). In *Mendoza*, the

---

[2] In *Pellegrini*, the Fourth Circuit was applying Maryland law on collateral estoppel. 125 F.4th at 127. However, Maryland state and federal law appear to be substantively the same, and both follow the Restatement (Second) of Judgments regarding collateral estoppel. *Id.*; *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015) ("The Court . . . regularly turns to the Restatement (Second) of Judgments for a statement of the ordinary elements of issue preclusion.").

Supreme Court held that nonmutual offensive collateral estoppel could not be used against the federal government, emphasizing that the government's unique role in nationwide litigation requires flexibility in the development of legal questions. 464 U.S. at 159-62. Because the government litigates issues of substantial public importance across multiple jurisdictions, allowing a single adverse decision to bind it in future cases "would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue." *Id.* at 160. Different administrations may also properly adopt different legal positions over time. *Id.* at 161. Accordingly, "courts should be careful when they seek to apply expanding rules of collateral estoppel to government litigation." *Id.* To be sure, *Mendoza* left open the possibility that estoppel may apply against the government in circumstances where mutuality is present. *Id.* at 163-64. But even then, "[i]ssue preclusion 'must be evaluated in light of the policy concerns underlying the doctrine.'" *Alabama*, 704 F. Supp. 3d at 76 (quoting *United States v. Stauffer Chemical Co.*, 464 U.S. 165, 176 (1984) (White, J., concurring)). *See also Pellegrini*, 125 F.4th at 127 ("In the application of equitable doctrines such as collateral estoppel . . . , courts must be cautious to ensure against inequitable results.").

### B.      Application to this case

Plaintiffs argue that, with respect to Maryland,[3] Defendants are collaterally estopped from arguing the Tucker Act issue, as well as the applicability of GEPA's notice-and-comment requirements, because the Department litigated and lost those arguments in federal litigation pending in the Western District of Washington in which Maryland was one of 16 state plaintiffs. *See Washington v. U.S. Dep't of Educ.*, Case No. 25-cv-1228-KKE, 2025 WL 2966255 (W.D.

---

[3] Recognizing that mutuality is required to invoke offensive collateral estoppel against the government, *Mendoza*, 464 U.S. at 165, Plaintiffs limit their argument to Maryland, which was a plaintiff in *Washington* (North Carolina and the District of Columbia were not). Pl. Br. at 14.

Wash. Oct. 21, 2025) (denying motion to dismiss for lack of subject matter jurisdiction and finding that the Tucker Act did not apply to claims); 807 F. Supp. 3d 1275 (W.D. Wash. Oct. 27, 2025) (granting preliminary injunction upon finding that plaintiffs were likely to succeed on the merits of their arbitrary and capricious claim and otherwise satisfied the standard for preliminary injunction), *stay pending appeal denied*, 161 F.4th 1136 (9th Cir. Dec. 4, 2025); 813 F. Supp. 3d 1222, 2025 WL 3690779 (W.D. Wash. Dec. 19, 2025) (granting summary judgment in favor of plaintiffs on arbitrary and capricious and contrary to law APA claims), *stay pending appeal denied*, 167 F.4th 1241 (9th Cir. Feb. 24, 2026).  Pl. Br. at 9-15.  An appeal has been docketed in the Ninth Circuit, and briefing is currently scheduled to be completed by August 7, 2026.  App. No. 26-510 (9th Cir.), Dkt. No. 29 (scheduling order).  The Court should reject Maryland's collateral estoppel argument because (1) the issues in *Washington* are not identical to those presented here; (2) the unmixed questions of law exception applies; (3) *Washington* conflicts with another determination of the same issue; and (4) even if the technical elements of collateral estoppel have been met, the Court should use its discretion not to allow it here.

First, collateral estoppel should not apply here because the "identical issue" requirement is not met.  *Washington* involved different grant programs created pursuant to different statutes and for different purposes,[4] different grants and grantees, different administrative records, and different agency decisions.  The non-continuation decisions here were issued months after those in *Washington*, and they were based on individualized analyses of each grant award at issue in this litigation and do not resemble the form notices at issue in *Washington*.  2025 WL 2966255, at *4 (quoting "identical" non-continuation notices that were sent to each grantee in *Washington*); Exs.

---

[4] *Washington* involved the Mental Health Service Professional Demonstration Grant Program and School-Based Mental Health Services Grant Program, which "support mental health services at elementary and secondary schools throughout the country" and were programs created by the Department in response to "the prevalence of violence and traumatic crises in schools."  2025 WL 2966255, at *1-2.

D1, D2, D3 (the non-continuation notices at issue in this case, which provide individualized reasoning regarding why each grant was discontinued).

The legal framework applied in *Washington* also at least arguably differs.  The *Washington* court applied Ninth Circuit case law on the Tucker Act—case law the court itself recognized as distinct from Fourth Circuit precedent.  *See Washington*, 2025 WL 2966255, at *9 (referring to the Fourth Circuit's stay order issued in *Sustainability Institute v. Trump*, No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025), as an "out-of-circuit decision[]" that is "not binding on this Court," and finding that "under binding Ninth Circuit authority, Plaintiff States' claims 'fall outside the jurisdictional bounds of the Tucker Act,'" quoting *Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Human Servs.*, 155 F.4th 1099, 1107 (9th Cir. 2025)).  Collateral estoppel should not apply where the prior decision conflicts with binding precedent—here, that of *Sustainability Institute*.  *See B&B Hardware*, 575 U.S. at 154 ("[I]ssues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same.") (quoting 18 C. Wright, A. Miller, & E. Cooper, Fed. Practice & Procedure § 4417, p. 449 (2d ed. 2002)); *Stauffer Chemical Co.*, 464 U.S. at 177-82 (White, J., concurring) ("preclusion is inappropriate in circuits that have adopted, or later adopt, the contrary legal rule").

Even if the legal issues in *Washington* and this case were identical, the "unmixed questions of law" exception to collateral estoppel applies here.  The applicability of the Tucker Act and GEPA's notice-and-comment rules are legal issues and, as explained *supra* (at 4-5), the facts underlying this case are "so unrelated to the prior case that relitigation of the issue is warranted." *Alabama*, 704 F. Supp. 3d at 73 (quoting *Stauffer Chemical Co.*, 464 U.S. at 171) (applying unmixed question of law exception and declining to apply offensive mutual collateral estoppel

against the government on an important legal issue); *see also Center for Biological Diversity v. Hamilton*, 385 F. Supp. 2d 1330, 1335 (N.D. Ga. 2005) (same).

Finally, assuming that Plaintiffs could overcome the above problems, this is precisely the kind of case in which the Court should decline to apply offensive collateral estoppel against the federal government, notwithstanding mutuality.[5]  Trial courts retain broad discretion to deny offensive collateral estoppel where its application would be unfair, and the Supreme Court has specifically cautioned against using it where the prior judgment conflicts with other decisions on the same issue. *Parklane Hosiery*, 439 U.S. at 331 & n.14.  Indeed, the Fourth Circuit declared just last year: "***it is black letter law that a determination will not have preclusive effect when it is 'itself inconsistent with another determination of the same issue*.'"  *Pellegrini*, 125 F.4th at 127 (quoting Restatement (Second) of Judgments § 29) (emphasis added).

That concern is present here.  The *Washington* decision is not part of a settled legal landscape.  It conflicts with another district court decision addressing similar challenges to grant non-continuation decisions by the Department—specifically, *Board of Educ. for Silver Consol. Schools v. McMahon*, 791 F. Supp. 3d 1272 (D.N.M. 2025), in which the United States District Court for the District of New Mexico found that the Tucker Act applied such that the court lacked subject matter jurisdiction over those challenges.  *Id.* at 1278-79, 1284-85.  This inconsistency alone counsels strongly against applying offensive collateral estoppel.

The broader public interest concerns are even more significant.  The legal questions involved here are of substantial public importance and are being litigated across the country.  Two

---

[5] Although both Maryland and the Department are parties in the *Washington* case, the District of Columbia and North Carolina, whose grants comprise the vast majority of funds in controversy here, are not involved.  Courts have found the presence of non-mutual parties to cut against application of collateral estoppel. *See Alabama*, 704 F. Supp. 3d at 78 (an "equitable consideration that also weighs against the application of issue preclusion in this instance is the presence of several non-mutual plaintiffs . . . who were not parties to the [prior] case").

other cases challenging non-continuation decisions by the Department related to the same program (FSCS) are currently pending in other federal district courts. *See Brighton Park Neighborhood Council v. McMahon*, Case No. 25-cv-4523-SLS (D.D.C.); *Afterschool for Children and Teens Now (ACT Now) Coal. & Metropolitan Family Servs.*, Case No. 25-cv-15704 (N.D. Ill.).[6] The Tucker Act issue has made its way to the Supreme Court twice, and to the Fourth Circuit twice, in less than one year. The legal landscape—on these and other significant legal issues involving actions taken by the Administration—is rapidly evolving. *E.g.*, *infra* note 12. Applying collateral estoppel here "would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue." *Mendoza*, 464 U.S. at 160. National policy should not hinge on one district court loss, especially where the government is currently appealing this single court decision. *Mendoza* warns against exactly that result.

Moreover, if Maryland wants to push this argument, then it should be prepared for the consequences. If, in another lawsuit, the federal government prevailed on a legal issue, under this theory, Maryland would be estopped in other unrelated litigation. The State does not concede this point, suggesting that this somehow only applies to the federal government. The other parties present in this litigation provide a further reason not to apply collateral estoppel here. In Maryland's view, the Court could decide it has no jurisdiction over the other parties' claims but then still proceed, despite that ruling, to address Maryland's claim notwithstanding its holding that it lacks jurisdiction over similar claims. This would be nonsensical.

Lastly, according to the Maryland Attorney General's Office's own accounting, the State of Maryland has filed or joined at least 62 lawsuits nationwide challenging actions by the

---

[6] In both *Brighton Park* and *ACT Now*, defendants have moved to dismiss plaintiffs' claims for lack of subject matter jurisdiction under the Tucker Act. The motions to dismiss are fully briefed and pending before the courts. In *ACT Now*, plaintiffs have also moved for a preliminary injunction. Briefing on the preliminary injunction is currently scheduled to be complete on June 1, 2026, with oral argument scheduled for June 8, 2026.

Administration.[7]   These lawsuits often proceed in multi-state coalitions that collectively represent a substantial portion of the country.  In *Washington* itself, Maryland was one of 16 plaintiff states.[8] These cases frequently involve overlapping legal issues.   Against that backdrop, applying collateral estoppel based on a single district court decision would effectively allow one court's ruling to bind the federal government across parallel litigation involving, at times, nearly half the country—operating, in practical effect, as a nationwide resolution of unsettled legal questions.  *Cf. Trump v. CASA*, 606 U.S. 831 (2025).

For these reasons, collateral estoppel should not be applied against Defendants in this case.

## II.   The Tucker Act Applies to Plaintiffs' Claims and Precludes Subject Matter Jurisdiction in This Court.

### A.   *Megapulse* Prong 1:  "the source of the rights upon which Plaintiffs base their claims"

Plaintiffs urge that the source of their rights are federal statutes, regulations, and the Constitution.  Pl. Br. at 17.  In this vein, Plaintiffs argue that they do not allege a breach of the grants, which are now expired.  *Id.*  The fact that Plaintiffs do not specifically allege a breach of contract is not determinative; that now-familiar argument has been considered and rejected many times.   For example, in granting a stay of the district court's preliminary injunction in *Sustainability Institute*, the Fourth Circuit explained:

> ***Like the plaintiffs in California, Plaintiffs here contend that their 'dispute does not hinge on the terms of a contract between the parties*.' . . .** Yet like the grants in *California*, the grants here were awarded by federal executive agencies to specific grantees from a generalized fund.  While the appropriations statutes

---

[7] *See* https://oag.maryland.gov/FederalActionsResponse/Pages/maryland-actions.aspx.  The Court may take judicial notice of information posted on the Maryland Attorney General's website.  *E.g.*, *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) ("This court and numerous others routinely take judicial notice of information contained on state and federal government websites.").

[8] *See also, e.g.*, *State of Oregon v. Trump*, Case No. 26-01472 (Ct. Intl. Trade) (plaintiffs include 24 states); *State of California v. Trump*, Case No. 26-cv-11581 (D. Mass.) (plaintiffs include 24 states); *State of New York v. Vought*, Case No. 25-2384 (D. Or.) (plaintiffs include 22 states); *Commonwealth of Massachusetts v. U.S. Dep't of Educ.*, Case No. 25-cv-13244 (D. Mass.) (plaintiffs include 22 states).

authorize the agencies to award grants, ***it is the operative grant agreements which entitle any particular Plaintiff to receive funds***.

2025 WL 1587100, at *2 (emphasis added).[9]  In other words, for purposes of the jurisdictional analysis, the essential query is whether the plaintiff's right to the remedy sought arises out of its agreement with the government or other substantive law.  It is not whether the plaintiff chooses to frame its claim as a breach of contract.

Here, Plaintiffs seek to be considered for a continuation award in a manner that they allege comports with the law.  Pl. Br. at 17.  To the extent Plaintiffs have any right to this remedy, that right "is created in the first instance by the contract," not any federal statute or regulation and certainly not the Constitution.  *Spectrum Leasing*, 764 F.2d at 894; *Solutions in Hometown Connections v. Noem*, 165 F.4th 835, 843 (4th Cir. 2026) ("Without that contractual basis, the plaintiffs could claim no relief," and finding Tucker Act applied to grant-related claims).  The grant agreements themselves contain specific provisions that apply to continuation awards.  *See* Ex. B1 (UMB Grant Award Notification) at 7 ("IN ACCORDANCE WITH 34 CFR 75.253, THE SECRETARY CONSIDERS, AMONG OTHER THINGS, CONTINUED FUNDING IF: . . . 2) THE DEPARTMENT DETERMINES THAT CONTINUING THE PROJECT WOULD BE IN THE BEST INTEREST OF THE GOVERNMENT."); *id.* at 10 (explaining that "FUTURE BUDGET PERIODS" refers to "[t]he estimated remaining budget periods for multi-year projects and estimated funds the Department proposes it will award the recipient ***provided*** substantial progress is made by the recipient in completing approved activities, ***the Department determines that continuing the project would be in the best interests of the Government***, Congress

---

[9] *See also, e.g.*, *Ingersoll-Rand v. United States*, 780 F.2d 74, 77 (D.C. Cir. 1985) ("We begin with the well-accepted proposition that a plaintiff may not avoid the jurisdictional bar of the CDA merely by alleging violations of regulatory or statutory provisions rather than breach of contract."); *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985) (finding that the source of plaintiff's rights was a contract, not the statute allegedly breached by the government, explaining that the statute "in no way creates the substantive right to the remedy [plaintiff] seeks"; rather, plaintiff's right to the remedy sought was "created in the first instance by the contract").

appropriates sufficient funds under the program, and the recipient has submitted a performance report that provides the most current performance information and the status of budget expenditures.") (emphasis added); Ex. B2 (DCPS Grant Award Notifications) at 5, 8, 57, 60 (same, for both DCPS grants); Ex. B3 (Duke Grant Award Notification) at 5, 8 (same).

Regarding the regulations Plaintiffs cite as giving rise to their rights (Pl. Br. at 17), Plaintiffs have no independent or standalone rights or interest in these regulations absent the grant agreements. In fact, the regulations expressly provide that it is "[t]he grant" itself that "obligates both the Federal Government and the grantee to the requirements that apply to the grant." 34 C.F.R. § 75.236. In any event, these regulations are incorporated by reference into the grants[10] and are thus themselves contract terms—the breach of which gives rise to a contract claim. *Boaz Housing Auth. v. United States*, 994 F.3d 1359, 1367 (Fed. Cir. 2021) ("That contractual provisions either are required by or incorporate governing regulations does not make those obligations any less contractual in nature."); *Solutions in Hometown Connections v. Noem*, Case No. 25-cv-00885-LKG, 2025 WL 1530318, at *12 (D. Md. May 29, 2025) ("the Plaintiffs have not shown that the source of their claims is regulatory, because the Uniform Guidance is incorporated into their Grant Agreements. And so, the Plaintiff[s] have simply not shown that the Court would look to sources beyond their Grant Agreement to resolve these claims."), *aff'd*, 165 F.4th 835 (4th Cir. 2026).[11] But for the grant agreements, Plaintiffs would have no basis for bringing this lawsuit.

**B.    Megapulse Prong 2: "the type of relief sought (or appropriate)"**

Regarding the second prong of *Megapulse*, Plaintiffs insist that the relief sought is

---

[10] *See* Ex. B1 at 7 (incorporating by reference 34 C.F.R. part 75); Ex. B2 at 5, 57 (same); Ex. B3 at 5 (same).

[11] In support of their position, Plaintiffs cite this Court's opinion in *Maryland v. Corp for Nat'l & Cmty. Serv.*, 785 F. Supp. 3d 68 (D. Md. 2025). Pl. Br. at 17, 18. For the reasons explained in Defendants' Brief, this case is readily distinguishable. Def. Br. at 10-11.

equitable, not monetary.  Pl. Br. at 18.  The thrust of Plaintiffs' arguments is that they are not directly seeking the payment of money from the government; rather, they seek "vacatur of Defendants' discontinuances."  *Id.*  Both the Fourth Circuit and the Supreme Court have specifically held that federal district courts lack jurisdiction under the Tucker Act to vacate grant *termination* decisions.  *Sustainability Institute v. Trump*, 165 F.4th 817, 828 (4th Cir. 2026) ("An order vacating the government's decision to terminate grants under the APA is in every meaningful sense an order requiring the government to pay those grants.") (quoting *Nat'l Institutes of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2664 (2025) (hereinafter "*NIH*") (Gorsuch, J., concurring in part and dissenting in part)); *NIH*, 145 S. Ct. at 2659 (per curiam) ("The [stay] application is granted as to the District Court's judgments vacating the Government's termination of various research-related grants.").  For the reasons stated in Defendants' Brief (at 7), grant *discontinuation* decisions should not be treated any differently.[12]

Plaintiffs attempt to distinguish the grant termination context by emphasizing that vacatur of the non-continuation decisions at issue here will not automatically reinstate the grants.  Pl. Br. at 18-20.  True enough.  But Plaintiffs are in this Court because their (alleged) instrumentalities have grants with the federal government (Compl. ¶¶ 48-56), those grants have been discontinued (*id.* ¶¶ 57-73), they have suffered financial harm as a result (*id.* ¶¶ 74-81), and Plaintiffs ***seek the enforcement of rights that they only have by virtue of the grants*** (*i.e.*, consideration for continuation awards in the manner they allege is legally required) (*id.* at 32, Prayer for Relief).  At the end of the day, Plaintiffs seek the quintessential contractual remedy of specific performance,

---

[12] Defendants previously noted that (insofar as undersigned counsel is aware) three district courts that have specifically considered whether the Tucker Act applies to claims challenging the non-continuation of federal grants.  *See* Def. Br. at 7-8.  For purposes of completion, another decision on this issue was entered after Defendants filed their opening brief, this time in the Southern District of New York.  The court held that the Tucker Act did not apply.  *See Bd. of Educ. of City Sch. Dist. of City of New York v. U.S. Dep't of Educ.*, No. 25-CV-8547-AS, 2026 WL 948205, at *3 (S.D.N.Y. Apr. 8, 2026).

and "a request for specific performance must be resolved by the Claims Court." *Ingersoll-Rand*, 780 F.2d at 80; *Sustainability Institute*, 165 F.4th at 828 (the Tucker Act applies where the relief sought is "the classic *contractual* remedy of specific performance") (quoting *Spectrum Leasing*, 764 F.2d at 894); *Albrecht v. Comm. on Emp. Benefits*, 357 F.3d 62, 68 (D.C. Cir. 2004) ("[E]ven for claims that are not for money damages, the APA confers no 'authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.' [5 U.S.C. § 702.]  The Tucker Act is one such statute. . . .  We have held that the Tucker Act 'impliedly forbids—in APA terms—not only district court awards of money damages, which the Claims Court may grant, but also injunctive relief, which the Claims Court may not.'").  No matter how Plaintiffs characterize the relief sought (as equitable, declaratory, or otherwise), an order compelling Defendants to perform under the terms of a written contract is an order to enforce a contract with the government—and, thus, one that this Court lacks jurisdiction to enter.

      **C.**      **The lack of a viable claim or adequate remedy in the Court of Federal Claims does not give rise to district court jurisdiction.**

Lastly, Plaintiffs argue that they have no adequate remedy in the Court of Federal Claims— they cannot bring a breach of contract claim because Defendants have not breached the contracts. Pl. Br. at 20-21.  Plaintiffs have an adequate remedy, because they can seek any contract damages they may have, *e.g.*, for bad faith or wrongful termination, in the Court of Federal Claims.  But the lack of a viable claim or an adequate remedy in the Court of Federal Claims does not somehow create jurisdiction in district court.  "Suits against the United States are 'available by grace and not by right,' and the relief available is subject to the conditions Congress sets."  *NIH*, 145 S. Ct. at 2662 (Barrett, J., concurring) (quoting *United States v. Tohono O'odham Nation*, 563 U.S. 307, 317 (2011)).

In the Tucker Act, Congress created a path for bringing contract claims against the United

States.  In doing so, Congress precluded the relief of specific performance and other types of injunctive relief.  That is a Congressional policy decision.  It does not warrant a finding of jurisdiction in district court or a recharacterization of what are in essence contract claims in order to create a claim or provide a remedy that Congress did not provide.  *See Sustainability Institute*, 165 F.4th at 828 n.7 ("the fact that the Tucker Act does not allow the specific relief Plaintiffs seek does not mean that their claims must proceed under the APA; rather, it shows that Congress made the dispositive choice for contract claims against the United States to be limited to certain money damages"); *Ingersoll-Rand*, 780 F.2d at 80 ("Congress has established, in the CDA, a scheme for the resolution of contract disputes.  That scheme includes a deliberate limitation on certain types of remedies.  To hold that the CDA does not apply merely because, under that scheme, plaintiff cannot receive all its requested remedies, would intolerably upset the congressional purpose underlying the Act.").

### III.    Plaintiffs Do Not State a Spending Clause Claim.

Plaintiffs' Spending Clause claim fails for the reasons stated in Defendants' Brief.  *See* Def. Br. at 12-16.  At bottom, Plaintiffs' theory would transform every agency decision to discontinue or terminate a grant based on changed priorities between administrations into a constitutional violation.  Plaintiffs state that their theory is not limited to GEPA, emphasizing that "Defendants' violations of the Spending Clause and GEPA are distinct."  Pl. Br. at 22.  Thus, under Plaintiffs' view, a Spending Clause violation arises whenever an agency discontinues funding based on revised policy priorities—even apart from any alleged statutory violation.

That theory is untenable.  The uniform guidance regulations applicable to most federal grant programs, including FSCS, expressly authorize agencies to terminate a grant where the "award no longer effectuates the program goals or agency priorities."  2 C.F.R. § 200.340(a)(4).

13

Plaintiffs' position would therefore constitutionalize these discretionary grant-administration decisions that federal regulations expressly permit.

The Department did not impose "retroactive conditions" on the grants. The Department "determine[d] the conditions of [each] grant" at the time of award (34 C.F.R. § 75.230), which for the grants at issue included the term incorporated into each of the grant agreements, that the Secretary would make repeated continuation award decisions for each grant under 34 C.F.R. § 75.253 (as opposed to grants that are fully funded at the time of the award and so do not depend on continuation awards). That continued funding in subsequent years would be contingent on a best-interest finding was an express term of the grants, which the grantees voluntarily accepted. Ex. B1 at 7, 10; Ex. B2 at 5, 8, 57, 60; Ex. B3 at 5, 8. Application of an express contract term in no way reflects the retroactive imposition of new conditions. The Spending Clause has no application in this context, and Plaintiffs' Spending Clause claim should be dismissed.

## IV.     Defendants' Opposition to Plaintiffs' Cross-Motion for Summary Judgment

Plaintiffs cross-move for summary judgment on Count III only. In Count III, Plaintiffs allege that the Department's non-continuation of the four FSCS grants at issue was procedurally invalid due to the Department's failure to engage in notice-and-comment rulemaking. Pl. Br. at 24-25. Plaintiffs ask the Court to vacate the non-continuation decisions "and remand to the agency for [] prompt new continuation determinations" and to issue declaratory relief to prevent the agency from relying on "improperly adopted priorities" on remand. *Id.* at 25.

At the outset, there is no subject matter jurisdiction in this case for the reasons discussed above and in Defendants' Brief. *Supra* at 8-13; Def. Br. at 6-12. Defendants incorporate those arguments herein for purposes of opposing Plaintiffs' cross-motion for summary judgment. On the merits, Plaintiffs' summary judgment motion should be denied because the Department was

14

not required to undertake notice-and-comment rulemaking before issuing the non-continuation decisions.  Finally, the Court should dismiss North Carolina's claims and decline to award any relief with respect thereto because North Carolina has not established standing to bring claims or seek relief with respect to the Department's non-continuation of the FSCS grant awarded to Duke, a private university well capable of suing in its own name.

### A.    Plaintiffs are wrong on the merits of Count III.[13]

The Department was not required to undertake notice-and-comment rulemaking before issuing the four non-continuation decisions at issue in this case.  Accordingly, there is no basis for this Court to vacate those decisions as procedurally defective under 5 U.S.C. § 706(2)(D), and Plaintiffs' cross-motion for summary judgment should be denied.

Plaintiffs challenge, and seek to vacate, the non-continuation decisions themselves, arguing that they are "procedurally invalid" for having failed to undergo notice and comment.  Compl. ¶¶ 121-123.  However, the non-continuation decisions themselves look nothing like rules that might be subject to the notice-and-comment rulemaking procedures set forth in Section 553 of the APA. *See* Exs. D1, D2, D3.[14]  "Legislative rules"—the subset of rules for which notice-and-comment may be required—are normally "generally applicable" and have only "future effect." *Safari Club Int'l v. Zinke*, 878 F.3d 316, 332-33 (D.C. Cir. 2017); *see United States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224, 244 (1973) (classifying agency action as a rule because it was "generalized [in] nature" and was meant "for prospective application only, rather than [to] adjudicate a particular

---

[13] The Court should decline to apply collateral estoppel on the merits issues as against Maryland for the reasons set forth above. *Supra* at 1-8.

[14] The APA defines "rule making" as the "agency process for formulating, amending, or repealing a rule."  5 U.S.C. § 551(5).  "Rule" is in turn defined as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the approval or prescription for the future of rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services or allowances therefor or of valuations, costs, or accounting, or practices bearing on any of the foregoing." *Id.* § 551(4).

set of disputed facts"). Because the non-continuation orders only address "a particular set of disputed facts," and do not establish generally applicable standards, they are not rules subject to notice-and-comment requirements. *Fla. E. Coast*, 410 U.S. at 246.

The same point is underscored by provisions of GEPA that plaintiffs disregard. Section 553(a)(2) generally exempts "matter[s] relating to . . . grants" from notice-and-comment requirements, an exemption that plainly covers the non-continuation decisions here. GEPA eliminates that exemption only for "regulations." 20 U.S.C. § 1232(d). And Congress defined a "regulation" as "any ***generally applicable*** rule, regulation, guideline, interpretation, or other requirement that—(1) is prescribed by the Secretary or the Department; and (2) has ***legally binding effect*** in connection with, or affecting, the provision of financial assistance under any applicable program." 20 U.S.C. § 1232(a) (emphasis added). Under this definition, there can be no dispute that the non-continuation decisions are not "regulations" under GEPA any more than they are "rules" under the APA, and notice-and-comment requirements do not apply. In discontinuing these four specific grants, the Department did not promulgate any rule at all, much less a "generally applicable" regulation with "legally binding effect." 20 U.S.C. § 1232(a).[15]

---

[15] Plaintiffs cryptically attach as Exhibit G to their brief a memorandum entitled "Directive on Department Grant Priorities," which is dated February 5, 2025 and signed by then-Acting Secretary of Education Denise L. Carter. Ex. G, ECF No. 12-21 (the "Directive"). Plaintiffs make no argument about the Directive in their brief, nor do they seek any relief with respect to the Directive. Plaintiffs only make cursory, background reference to it in discussing the arguments presented to the court in the *Washington* case. *See* Pl. Br. at 10, 12. The Directive is also mentioned in cursory fashion in paragraphs 60-62 of the Complaint, but the Complaint otherwise makes no substantive argument regarding, nor seeks relief with respect to, the Directive. Rather, the substance of the Complaint and Plaintiffs' Brief, as well as the relief sought in each, is directed to the Department's non-continuation decisions.

This is for good reason. In *California v. U.S. Dep't of Educ.*, Case No. 25-cv-10548-AK (D. Mass), the plaintiffs, which include the State of Maryland, seek vacatur of the Directive based on (among other things) the Department's failure to undertake notice-and-comment rulemaking. *Id.*, ECF No. 144 (Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment). Any claim presenting that issue in this case (although, as explained, Plaintiffs appear to carefully avoid raising it here) should be dismissed under the first-to-file rule, *e.g.*, *Savada v. RRH Energy Servs., LLC*, 808 F. Supp. 3d 702, 706 (D. Md. 2025) ("'when multiple suits are filed in different Federal courts upon the same factual issues, the first or prior action is permitted to proceed to the exclusion of another subsequently filed'"), and/or because it violates the rule against claim-splitting, *e.g.*, *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 452 F. Supp. 2d 621, 626 (D. Md. 2006) ("when a suit is pending in federal court, a plaintiff has no right to assert

In short, the Department did not promulgate any rule or regulation in discontinuing the four grants at issue here, and GEPA's notice-and-comment requirements have no relevance. Instead, the Department exercised existing authority conferred by 34 C.F.R. § 75.253(a)(5) (a regulation long utilized by the Department which itself was originally subject to notice and comment, *see* 45 Fed. Reg. 22,494, 22,510 (Apr. 3, 1980), and then updated through notice and comment in 2024, *see* 89 Fed. Reg. 70,328), to determine that the projects no longer served the government's best interests.[16] This regulation provides:

> A grantee, in order to receive a continuation award from the Secretary for a budget period after the first budget period of an approved multiyear project, must— . . . [among other things] [r]eceive a determination from the Secretary that continuation of the project is in the best interest of the Federal Government.

34 C.F.R. § 75.253(a)(5). In determining whether to make a continuation award, "the Secretary may consider any relevant information regarding grantee performance. This includes considering reports required by § 75.118, performance measures established under § 75.110, financial information required by 2 CFR part 200, and ***any other relevant information***." *Id.* § 75.253(b) (emphasis added). "The Secretary may decide not to make a continuation award if . . . [a] grantee fails to meet any of the requirements in paragraph (a) of this section." *Id.* § 75.253(f)(1).

Plaintiffs attempt to read into this regulation a statutory prohibition under GEPA against the Department *ever* discontinuing grants based on a shift of policy preferences between

---

another action 'on the same subject in the same court, against the same defendant at the same time.'"), *aff'd in relevant part*, 273 F. App'x 256 (4th Cir. 2008).

[16] The Department's best-interest determinations are committed to agency discretion by law and are therefore unreviewable under the APA. 5 U.S.C. § 701(a)(2) ("This chapter applies . . . except to the extent that . . . agency action is committed to agency discretion by law"); *Webster v. Doe*, 486 U.S. 592, 600 (1988) (implementation of statute allowing agency to terminate an employee whenever the Director "shall deem such termination necessary or advisable in the interests of the United States" was "committed to agency discretion by law," thus precluding APA review); *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993) ("The allocation of funds from a lump-sum appropriation is another administrative decision traditionally regarded as committed to agency discretion"; accordingly, plaintiffs could not seek APA review of the agency's decision to terminate a federal program).

administrations.[17]  The best-interest provision has no such constraint.  It permits the Department to consider the full range of government interests at the time of the continuation decision; it is not limited to the priorities identified at the outset of the grant competition and does not lock into place the policy preferences of the administration in power at the time of the initial grant award.  *Baldwin v. Dir., Off. of Workers' Comp. Programs, U.S. Dep't of Lab.*, 170 F.4th 273, 283 (4th Cir. 2026) ("We decline to read a substantive requirement into a regulation that does not appear anywhere within the plain text").  Plaintiffs' reading also renders the best-interest requirement largely superfluous, because other continuation criteria—such as whether the grantee has made "substantial progress in achieving . . . [t]he goals and objectives of the project" (34 C.F.R. § 75.253(a)(1))—already address whether a project furthers the priorities set at the start of a grant competition.  *See Baldwin*, 170 F.4th at 284 ("we abide by the principle of regulatory interpretation that 'constructions which render regulatory provisions superfluous are to be avoided'").

Finally, contrary to Plaintiffs' contention, there has been no change to the Department's FSCS grant priorities that are applied to the selection of new awards.  Pl. Br. at 26-27.  Plaintiffs are conflating the published final priorities for FSCS competitions, which govern the selection of new awards, with the entirely separate legal framework that these (and all) competitive grants may be denied continuation funding if determined to no longer be in the best interest of the federal government.  As to FSCS grant priorities, on July 13, 2022, the Department published a notice in the Federal Register announcing "final priorities, requirements, definitions, and selection criteria" that it "may use . . . for competitions" under the FSCS program "for the purpose of awarding grants."  87 Fed. Reg. 41,675-02.  In it, the Department committed to three final priorities to be

---

[17] In footnote 6 of their brief, Plaintiffs clarify that the Department could not discontinue a grant based on changed priorities *even if* the revised priorities had gone through notice and comment.  *See* Pl. Br. at 18 n.6 ("Plaintiffs do not mean to suggest that priorities that go through notice and comment rulemaking can be retroactively applied to already established grants.").

used in selecting projects to award FSCS grants.  The agency would prioritize (1) "Capacity Building and Development Grants" (*i.e.*, "[p]rojects that propose to (a) conduct initial development and coordination activities . . . to develop the infrastructure, activities, and partnerships to implement full-service community schools . . . , and (b) gather data on performance indicators"); (2) "Multi-Local Educational Agency Grants" (*i.e.*, "[p]rojects that propose to implement and sustain full-service community schools in two or more LEAs [local educational agencies]"); and (3) "FSCS State Scaling Grants" (*i.e.*, projects that focus on scaling the full-service community school at the statewide level).  *Id.*  On June 7, 2023, the Department published another notice in the Federal Register announcing a fourth final priority to be used "to support competitions under the FSCS program."  88 Fed. Reg. 37,218-01.  In it, the Department committed to prioritizing projects in which the applicant agrees to participate "in a national evaluation of effectiveness using a randomized controlled trial design."  *Id.*  These published final priorities are unchanged and continue to govern competitions for the selection of new awards for FSCS grants.

But those published priorities do not purport to limit the Department's discretion to make determinations not to continue previously funded grants.  *See* 87 Fed. Reg. 41,675-02; 88 Fed. Reg. 37,218-01.  Rather, the regulatory framework that provides that continuation funding requires a determination that continuation of the project is in the best interest of the government (*see* 34 C.F.R. § 75.253(a)(5)), went through notice and comment rulemaking multiple times.  *See* 59 Fed. Reg. 30,261 (June 10, 1994); 78 Fed. Reg. 49,354 (Aug. 13, 2013); 89 Fed. Reg. 70,328 (Aug. 29, 2024).  Plaintiffs had had multiple opportunities to comment on the ability of the government to deny continuation funding for a grant award that is no longer in the best interest of the government each time 34 C.F.R. § 75.253 went through notice and comment rulemaking, and this "best interest" consideration has been present since the inception of this regulation.

19

### B.     North Carolina has not established standing.

Defendants do not dispute that Maryland and the District of Columbia have standing to challenge the non-continuation of the FSCS grants for which UMB and the DCPS are the grant recipients.[18]   However, "standing is not dispensed in gross" and "plaintiffs must demonstrate standing *for each claim that they press and for each form of relief that they seek*." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (emphasis added).   North Carolina asserts claims and seeks relief related to the Department's non-continuation of an FSCS grant that was awarded to Duke.   Compl. ¶ 28; Ex. B3 at 4.   North Carolina cannot rely upon an instrumentality theory of standing to challenge the non-continuation of the FSCS grant awarded to Duke,[19] and has not otherwise established its standing.   As a result, the Court should dismiss any claims related to Duke's grant and decline to award any relief regarding the same.

"A plaintiff has standing only if he can 'allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *California v. Texas*, 593 U.S. 659, 668-69 (2021) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)).   The same standing requirements apply equally when a state is plaintiff. *Id.*   For injury in fact, the alleged injury must be "concrete"; "particularized"—meaning, it "must affect 'the plaintiff in a personal and individual way' and not be a generalized grievance"); and "actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). For causation, among other requirements, the link between the alleged unlawful conduct and injury

---

[18] Because one plaintiff's standing is sufficient for the case to proceed past a motion to dismiss, Defendants did not raise the issue of North Carolina's standing in their opening brief. *E.g.*, *Biden v. Nebraska*, 600 U.S. 477, 489 (2023) ("If at least one plaintiff has standing, the suit may proceed.").

[19] Duke is a private university and is not an instrumentality of North Carolina, as Plaintiffs appear to recognize. *See* Pl. Br. at 23-24 (describing UMB as an instrumentality of Maryland and DCPS as an instrumentality of the District of Columbia, but not alleging the same with respect to North Carolina).

"must not be too speculative or too attenuated." *Id.* at 383.  Where, as here, the plaintiff challenges "the government's 'unlawful regulation . . . of *someone else*,'" standing "is ordinarily substantially more difficult to establish.'"  *Id.* at 382.  "In recent years, the Supreme Court has specifically cautioned us to be wary of theories of state standing that rely on the 'indirect effects' of federal policy on state revenue or state spending."  *Washington v. U.S. Food & Drug Admin.*, 108 F.4th 1163, 1175 (9th Cir. 2024).  "[A] theory of state standing 'in which all peripheral costs imposed on the States by actions of the [executive branch]' constitute cognizable injuries would 'make a mockery' of Article III."  *Id.* (quoting *Arizona v. Biden*, 40 F.4th 375, 386 (6th Cir. 2022)).

Here, North Carolina bases its standing on economic injury that it will allegedly suffer as a result of the non-continuation of Duke's FSCS grant.  Specifically, North Carolina suggests that it will have to pay money to "fill the financial gap to prevent disruption" to "after-school, tutoring, parental support, and other services for students."  Compl. ¶ 81.  This alleged injury is not actual or imminent, but is instead entirely speculative.  Plaintiffs provide no evidence that North Carolina will in fact fill this "financial gap" using its own funds, or that it is required to do so by virtue of a state's obligation to provide for public education.  *See id.*  In any case, a state's choice to expend its own funds on a program that the federal government does not wish to fund is not a cognizable injury.  *Cf. United States v. Texas*, 599 U.S. 670, 676-81 (2023).  Further, the causal link between the Department's non-continuation of Duke's grant and the potential downstream economic impacts to the State of North Carolina is too attenuated to support Article III standing.  *See, e.g.*, *California*, 593 U.S. at 674-75 (plaintiff States lacked standing to challenge Affordable Care Act requirements because their alleged "pocketbook injuries" in the form of downstream economic costs—such as "increased use of (and therefore cost to) state-operated medical insurance programs" and "increased administrative and related expenses"—were not fairly traceable to any

government conduct); *Food & Drug Admin.*, 602 U.S. at 390-91 (plaintiffs lacked standing where alleged downstream economic consequences, including having to divert resources and increased liability and insurance costs, resulting from challenged government action were "too speculative and otherwise too attenuated to establish standing").  As a premier American university, Duke is perfectly capable of bringing suit over its own interests, rather than having the State in which Duke is located bring suit based on speculative, attenuated injuries.  Accordingly, to the extent Plaintiffs' claims rest on the Department's non-continuation of Duke's FSCS grant and seek relief therefrom, Plaintiffs have not demonstrated standing for those claims or that form of relief.

## CONCLUSION

For the foregoing reasons and those discussed in Defendants' Brief, Defendants respectfully request that the Complaint be dismissed.  Alternatively, in the event that Plaintiffs' Cross-Motion for Summary Judgment is not moot, Defendants respectfully request that it be denied.

Dated:  May 15, 2026

                                        Respectfully submitted,

                                        Kelly O. Hayes
                                        United States Attorney

                              By:    */s/ Jessica Dillon*
                                        Jessica F.W. Dillon (Bar No. 19249)
                                        Assistant United States Attorney
                                        36 South Charles Street, 4th Floor
                                        Baltimore, Maryland 21201
                                        (410) 209-4892 (direct)
                                        (410) 962-2310 (fax)
                                        jessica.dillon@usdoj.gov

                                        *Counsel for Defendants*

22